IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| AIMEE E. NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 05-6327-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| COMMISSIONER of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Alan Stuart Graf, P.C.
P. O. Box 98
Summertown, Tennessee  38483

      Attorney for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Neil J. Evans
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon  97204-2902

Page 1 - OPINION AND ORDER

Terrye E. Shea
Special Assistant United States Attorney
Assistant Regional Counsel
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, Washington  98104-7075

    Attorneys for Defendant

KING, Judge:

Plaintiff Aimee Nelson brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB").  I remand the decision of the Commissioner.

## BACKGROUND

Plaintiff filed an application for DIB on January 27, 1999 and again on September 14, 1999, alleging disability from July 8, 1998.  The January application was denied initially and plaintiff did not further pursue it.  The September application was denied initially and upon reconsideration.  After a timely request for a hearing, plaintiff, represented by counsel, appeared before an Administrative Law Judge ("ALJ") on January 30, 2001.  On April 26, 2001, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act and therefore not entitled to benefits.  This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on August 22, 2005.

## LEGAL STANDARDS

The Social Security Act (the "Act") provides for payment of DIB to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits ("SSI") may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The burden of proof to establish a disability rests upon the claimant. Gomez v. Chater, 74 F.3d 967, 970 (9th Cir.), cert. denied, 519 U.S. 881 (1996) (DIB); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992) (SSI). To meet this burden, the claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. 20 C.F.R. §§ 404.1520 and 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1996) (DIB); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989) (SSI). First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and

determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Distasio v. Shalala, 47 F.3d 348, 349 (9th Cir. 1995) (DIB); Drouin, 966 F.2d at 1257 (SSI). The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

Page 4 - OPINION AND ORDER

When an individual seeks either DIB or SSI because of disability, judicial review of the Commissioner's decision is guided by the same standards. 42 U.S.C. §§ 405(g) and 1383(c)(3). This court must review the case to see if the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). It is more than a scintilla, but less than a preponderance, of the evidence. Id.

Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision. Id. The court must weigh both the evidence that supports and detracts from the Commissioner's decision. Id. The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner. Id. at 720-21.

## FACTS

I.   Nelson's History

Plaintiff, a 46 year old woman at the time of the hearing, alleges disability beginning July 8, 1998, as a result of herniated discs, lumbar strain, torn cartilage in the right knee and severe depression. Plaintiff completed high school.

Plaintiff injured her back while working at a school in December of 1995, and re-injured it in August of 2006. She continued to work with low back pain for a time, but did not work from September of 1996 to mid-October of 1996 due to back pain. Her treating physician, Kerry O'Fallon, MD, directed her to return to light duty work on a half-time basis, but she experienced

Page 5 - OPINION AND ORDER

the back pain again a week later. She began light duty work again toward the end of October and continued to work full time, although with frequent absences, including one as long as several months, until July of 1998.

Dr. O'Fallon prescribed pain medication and physical therapy for the back injuries, and obtained a CT scan. The CT scan revealed a moderate to severe centralized disc bulge at L4-5, mild lateral recess stenosis at L5, and some evidence of calcification. Dr. O'Fallon referred plaintiff to Michael E. Karasek, MD.

Dr. Karasek saw plaintiff in January and February of 1997, and attempted to treat plaintiff's low back pain with epidural steroid injections. Dr. Karasek stated, "I don't really see why this patient is so disabled from her pain but the MRI findings are significant and therefore, we have to get a surgical opinion . . . ." Tr. 236. Dr. Karasek referred plaintiff to Christopher G. Miller, MD, a neurosurgery specialist.

Dr. Miller noted in March of 1997 that the MRI showed a degenerated and central disc herniation at L4-5, but also opined that she was capable of working with restrictions. In May of 1997, Dr. Miller increased Nelson to six hours a day. The next month he increased her to full time light duty work. The following month, Dr. Miller recognized that plaintiff could not work more than six hours without experiencing an "unacceptable level of back pain." Tr. 207. He stated, "I think this is a difficult situation. It is clearly affecting her life and ability to function. On the other hand, if she is not at work and doing the repetitive bending activity that seems to flare up her back, her overall situation is not that bad." Id. In December of 1997, Dr. Miller stated that plaintiff had three options: continue reduced level of activity with continued pain, obtain more physical therapy which probably would not be effective, or surgery. After several

months off work, Dr. Miller encouraged plaintiff to return to light duty full time, in March of 1998.

Plaintiff returned to Dr. O'Fallon, expressing concerns about Dr. Miller's order. "She feels that she would not be able to achieve more than maybe 2-4 [hours] at the most and that she really does not feel or understand why a month of this would be helpful as far as her problem." Tr. 304. Dr. O'Fallon promised to talk to Dr. Miller. Some sort of communication took place between the doctors and the industrial carrier, and almost a month later, Dr. O'Fallon told plaintiff she "absolutely does need to return to work." Tr. 304. In May and June of 1998, plaintiff reported her inability to work beyond half-time due to pain.

In April of 1999, Dr. O'Fallon opined that plaintiff was limited to sitting one hour at a time for four hours in an eight-hour work day, standing for one-half hour at a time for a total of four hours, and walking for one-half hour at a time for two hours. He also indicated that she could not maintain this level of activity on a sustained basis (i.e. 8 hours a day, 5 days a week). In a letter dated April 6, 2000, Dr. O'Fallon reported plaintiff could perform sedentary work if she could move around at will, and if the work did not require repeated twisting, bending, or stooping.

Barbara Ann Perry, Ph.D., diagnosed plaintiff with mild depression secondary to chronic back pain, and with an adjustment disorder with depressed mood, mild, secondary to chronic back pain.

II.     The ALJ's Decision

The ALJ found that plaintiff has degenerative disc disease, back strain, an adjustment disorder with depressed mood, an anxiety disorder, post-traumatic stress disorder, and a history

Page 7 - OPINION AND ORDER

of marijuana and methamphetamine abuse; all of these impairments are considered "severe" within the meaning of 20 C.F.R. § 404.1520(b).

The ALJ determined that despite these impairments, plaintiff retained the residual functional capacity to lift and carry no more than 10 pounds frequently and 20 pounds occasionally, is limited in her ability to twist, bend or stoop repetitively, is limited to sitting one hour at a time and four hours in a workday, standing one-half hour at a time and four hours in a workday, and walking one-half hour at a time and two hours in a workday. Finally, the ALJ found that plaintiff has moderate limitations in interacting with the public and following detailed instructions.

Relying on the vocational expert's ("VE") testimony based on this residual functional capacity, the ALJ concluded that plaintiff could not return to her past relevant work as a custodian, a school bus driver, a cook, and a teachers' aide. Nevertheless, the VE testified that plaintiff could perform work as a food and beverage order taker, document preparer, and appointment scheduler. Accordingly, the ALJ found that plaintiff was not under a "disability" within the meaning of the Social Security Act, at any time through the date of his decision.

## DISCUSSION

I.  Credibility Determination

Plaintiff contends that the ALJ improperly rejected her testimony. The Commissioner responds that after evaluating the medical evidence the ALJ properly rejected plaintiff's testimony.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce

objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom. The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. Id. at 1282.

In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. Id. at 1284.

Plaintiff produced medical evidence of underlying impairments consistent with her complaints and there is no evidence that she is malingering. Therefore, the ALJ must provide clear and convincing reasons for rejecting the testimony.

The ALJ stated simply, "Examination comments have included reference to inconsistencies, functional overlay and symptom magnification (Exhibit 3F/2)." Tr. 53. Exhibit 3F/2 reports that an independent medical examination by orthopedist, Steven Schilperoort, MD, and neurologist, Cathleen Farris, MD, perceived functional overlay and symptom magnification. This medical examination does not appear to be in the record. The ALJ also stated, "The claimant is not fully credible for reasons stated above." Id.

Page 9 - OPINION AND ORDER

The "reasons stated above" are not set forth specifically, but rather are included in the overall summary of plaintiff's medical record. They include: plaintiff's refusal to take Zoloft for her depression because of its sexual dysfunction side effect, even though only 1.7 percent of women experience such a condition while taking the medication; plaintiff wore wrist braces during the day for her carpal tunnel when she was told to wear them primarily at night, and she told her counselor she might need surgery when this was not an option identified by Dr. O'Fallon in his notes; she complained to her doctor of pain in her left knee but a week later complained to her counselor of severe deterioration in both knees; she used a cane when it was not prescribed; in 2001, she told her counselor that she was abused and tortured by her eleven siblings but told the clinical psychologist who evaluated her in 1999 that her childhood was "affectionate, stable, and supportive" and that she had four siblings; and plaintiff stated she finally felt safe in a locked apartment building but then later claimed she suffered from severe claustrophobia.

When making a credibility evaluation, the ALJ may consider objective medical evidence and the claimant's treatment history as well as any unexplained failure to seek treatment or follow a prescribed course of treatment. Smolen, 80 F.3d at 1284. In addition, the ALJ may employ ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms and other statements by the claimant that appear to be less than candid. Id.

Plaintiff's refusing to take Zoloft for the reason stated is not a valid basis on which to discredit her pain testimony; she could have been experiencing that particular side effect but have failed to describe it as such. Similarly, it is a stretch to base a credibility determination on

plaintiff's remark that she felt safe in a locked apartment when she also claimed to suffer from claustrophobia. The two are not necessarily inconsistent.

The ALJ's remaining reasons are clear and convincing, however. She gave vastly different descriptions of her childhood, misstated the number of siblings she had, did not follow the prescribed course of treatment of wearing the wrist braces at night, and exaggerated her complaints about knee pain and treatment for her carpal tunnel. The ALJ did not err in concluding that Nelson was not entirely credible in describing her symptoms.

II.     Lay Witness Testimony

Plaintiff argues that the ALJ improperly rejected the testimony of Brooke Shafer, LCSW. The ALJ dismissed the report because it did not come from an acceptable medical source

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. A medical diagnosis, however, is beyond the competence of lay witnesses. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).

Shafer acted as a counselor for plaintiff and saw her regularly. The social worker submitted a letter on behalf of plaintiff stating, in relevant part, "[Plaintiff] has an unsteady gait and often walks with a cane. She has difficulty getting into and out of a chair. While sitting she appears restless and constantly changes position because of her back pain." Tr. 356.

The ALJ properly declined to rely on Shafer's opinions as to plaintiff's depression and PTSD, due to the fact that a social worker is not an acceptable medical source. In addition, although plaintiff argues the ALJ should also have commented on the social worker's observation that plaintiff engages in angry outbursts, it is not clear from Shafer's report whether

the social worker observed such behavior or whether plaintiff simply reported this behavior to Shafer. As a result, the ALJ did not err in his failure to remark on Shafer's report of plaintiff's anger.

The ALJ should have addressed Shafer's observations regarding plaintiff's physical discomfort. However, the error was harmless. "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006). The ALJ recognized plaintiff's physical discomfort in forming plaintiff's residual functional capacity–plaintiff is limited to sitting one hour at a time and four hours in a workday. She should be permitted to move at will. Even if the ALJ had accepted Shafer's observations, the outcome would not have been different. Accordingly, any error the ALJ made was harmless.

III.     Medical Opinions

Plaintiff argues that the ALJ should have accepted Dr. O'Fallon's opinion that plaintiff is unable to maintain employment. In other words, while plaintiff may be able to sit, stand or lift, she cannot do so on a sustained basis.

The Commissioner responds that the ALJ addressed Dr. O'Fallon's opinion that plaintiff is unable to work on a sustained basis.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. Lester, 81 F.3d at 830. More weight is given to the opinion of a treating physician because the person has a greater

Page 12 - OPINION AND ORDER

opportunity to know and observe the patient as an individual. Id.; Smolen, 80 F.3d at 1285. If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Id. at 831. Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it. Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999).

Plaintiff asserts that the ALJ failed to give clear and convincing reasons for rejecting Dr. O'Fallon's opinions. However, it appears the ALJ adopted Dr. O'Fallon's conclusion as to plaintiff's limitations in sitting, standing and walking when forming plaintiff's residual functional capacity. It is true, as plaintiff points out, that Dr. O'Fallon opined that plaintiff could not withstand the level of activity eight hours a day, five days a week. However, Dr. O'Fallon apparently later clarified in a February 2001 letter that he meant plaintiff needed to be able to change positions frequently. This letter is not in the record, as conceded by the Commissioner, but the ALJ specifically pointed out the February 2001 letter in his opinion, and plaintiff does not appear to refute its existence. The ALJ's determination that plaintiff can sustain full-time employment is supported by substantial evidence.[1]

---

[1] The statement in Dr. O'Fallon's April 2000 letter that it "would be very difficult for [plaintiff] to sustain a job for a significant period of time without difficulty" is contradictory to his opinion that plaintiff could do sedentary work if she can move around.

Page 13 - OPINION AND ORDER

IV.     Residual Functional Capacity

Plaintiff argues that the ALJ failed to discuss the limitations identified by the State agency physicians. In addition, plaintiff asserts that the ALJ neglected to ask the VE about the effect of plaintiff's inability to follow detailed instructions. Plaintiff also points out that the ALJ found plaintiff's severe impairments included post-traumatic stress disorder, anxiety disorder, and adjustment disorder with depressed mood, but did not ask the VE about the effect of any limitations associated with these severe impairments. Finally, the ALJ did not ask the VE about the effect of plaintiff's carpal tunnel syndrome, which had been diagnosed on April 18, 2000.

The Commissioner appears to assert that it was harmless error for the ALJ to fail to discuss the opinions of the State agency physicians because "plaintiff has not shown how any of the limitations identified would have impacted any of the jobs identified by the vocational expert at step five." Defendant's Brief at 21. In addition, the Commissioner asserts that the ALJ did indeed ask the VE about the effect of plaintiff's inability to follow instructions.

The Commissioner has the burden in step five, and can satisfy this burden if he asks the VE a hypothetical question that sets forth all the limitations of the claimant. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). The assumptions in the hypothetical question must be supported by substantial evidence. Id. When the vocational hypothetical does not reflect all of the claimant's limitations, the "expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991) (citations omitted).

The Commissioner is correct that the ALJ specifically asked the VE about plaintiff's inability to follow detailed instructions. As for any limitations associated with plaintiff's post-

Page 14 - OPINION AND ORDER

traumatic stress disorder, anxiety disorder, and adjustment disorder with depressed mood, the ALJ included in the residual functional capacity moderate limitations interacting appropriately with the public and following detailed instructions. Plaintiff has not pointed to a medical record that identifies other functional limitations the ALJ should have included in his hypothetical question. As a result, the ALJ's residual functional capacity is supported by substantial evidence, at least as to these limitations.

Plaintiff is correct that the ALJ neglected to consider some of the opinions of the State agency physicians. Richard Alley, MD, opined that plaintiff should avoid concentrated exposure to hazards such as machinery, and is limited to only occasionally climbing ladders, ropes and scaffolds, and occasionally stooping, crouching and crawling. Sharon Johnson, MD, opined that plaintiff should avoid concentrated exposure to vibration and hazards. Dr. Johnson also indicated that plaintiff should never climb ladders, ropes or scaffolds, and only occasionally stoop, crouch or crawl. Finally, according to plaintiff, L. Bufton, MD, found that plaintiff had limited range of motion in her back and neck after examination of her in October of 1999. Plaintiff cites Dr. Bufton's "Range of Joint Motion Evaluation Chart." Tr. 257.

Contrary to plaintiff's argument, the ALJ's residual functional capacity accounted for the limitation suggested by Drs. Johnson, Alley and O'Fallon that plaintiff engage in stooping only occasionally when the ALJ opined that plaintiff should not do so repetitively. Indeed, Dr. O'Fallon specifically stated in April 2000 that plaintiff should avoid "repeated" twisting, bending and stooping. Tr. 288. In addition, the ALJ accounted for plaintiff's limited range of motion identified by Dr. Bufton when he formed the residual functional capacity limiting twisting, bending and stooping.

Page 15 - OPINION AND ORDER

However, the ALJ did not account for the limitations on crouching and crawling, nor did he ask the VE about the additional limitations suggested by Drs. Johnson and Alley that plaintiff avoid exposure to vibration and hazards, and climbing ladders, ropes or scaffolds. While I find it difficult to believe that plaintiff would be precluded from performing work as a food and beverage order taker, document preparer, and appointment scheduler with these added limitations, I am not qualified to make that judgment. The hypothetical question posed to the VE must contain all the limitations supported by substantial evidence or the VE's testimony is of no value.

Finally, the ALJ did not ask the VE about the effect of plaintiff's carpal tunnel syndrome, which had been diagnosed on April 18, 2000. Dr. O'Fallon opined in April of 1999 that plaintiff could use her hands frequently. Relying on this opinion, the VE stated that plaintiff could work as a food and beverage order taker and appointment scheduler even if plaintiff is unable to use her hands constantly. In January of 2004, Timothy Hill, MD, diagnosed plaintiff with mild carpal tunnel syndrome in her right hand, and stated that work would need to be limited in terms of its repetitiveness as a result. On remand, the ALJ should explain why plaintiff's carpal tunnel syndrome does not qualify as a severe impairment. If it does, the ALJ should determine how it affects her residual functional capacity, and whether plaintiff is still capable of working as a food and beverage order taker and appointment scheduler.

///

///

///

## CONCLUSION

The decision of the Commissioner is reversed and this action is remanded to the Commissioner under sentence four of U.S.C. § 405(g) for rehearing consistent with this opinion. Judgment will be entered.

IT IS SO ORDERED.

Dated this    26th    day of October, 2006.

                                            /s/ Garr M. King
                                            Garr M. King
                                            United States District Judge